## Alexandria
## JORGE SAMUEL MORENO
### v.
## COMMONWEALTH OF VIRGINIA
No. 0760-88-4

Decided May 29, 1990

COUNSEL

Timothy J. McGary, for appellant.

Birdie H. Jamison, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Jorge Samuel Moreno appeals his conviction for possession of cocaine with intent to distribute in violation of Code § 18.2-248 for which he received a twenty year penitentiary sentence and a $30,000 fine. Despite a discovery order to provide Moreno with exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), the Commonwealth did not provide to him until mid-trial evidence which tended to impeach one of the Commonwealth's primary witnesses, who until then had been a confidential informant. The Commonwealth concedes that the impeachment evidence, consisting of the informant's criminal record and an informant's agreement to aid the police, is exculpatory and therefore was discoverable under *Brady*. Moreno argues that the late disclosure was prejudicial because it prevented him from having an opportunity to investigate effectively other available evidence with which to impeach the witness. Moreno contends that he was unable to ameliorate the prejudice occasioned by late disclosure despite the trial court's granting a continuance, and that under the circumstances, the trial court erred by not excluding the testimony of the confidential informant. Alternatively, he contends that even if actual prejudice was not demonstrated, where the Commonwealth has failed to show clearly that the delay was in good faith, late disclosure should be deemed *per se* prejudicial.

Moreno's argument for exclusion of the witness' testimony was based solely on the theory that to allow the witness to testify without timely discovery was prejudicial. He did not contend or attempt to show that the mid-trial appearance of the informant was an intentional subversion of the Commonwealth's discovery obligation. He did not claim or attempt to prove that the Commonwealth's attorney did not act in good faith when he stated that the informant would not be called as a witness or that he was doing so intentionally to avoid timely disclosure. Therefore, on appeal, Moreno's challenge is limited to whether he demonstrated prejudice as a result of late disclosure, Rule 5A:18; *Stotler v. Commonwealth*, 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986), or whether on these facts late disclosure should be deemed prejudicial.

We uphold the trial court's finding that Moreno did not prove that the late disclosure was prejudicial. Thus, his constitutional due process right, as defined in *Brady v. Maryland* to call

for evidence in his favor and at a time sufficient to prepare and present his defense was not violated. In the absence of evidence that late disclosure prejudiced the defense, or absent an objection and a trial court finding that the prosecutor deliberately violated his discovery duties, it is not an abuse of discretion for the trial court to refuse to exclude the challenged evidence. *See* Code § 19.2-265.4. Accordingly, we affirm the defendant's conviction.

Moreno was arrested for distributing cocaine on November 25, 1987, as part of an undercover sting operation. The purchase of the drugs from Moreno was arranged by an informant, Curtis Todd. The Commonwealth's attorney decided prior to trial not to call Todd as a witness in order to keep Todd's identity confidential. Instead, the Commonwealth chose to rely upon the testimony of the police investigators and of Antonio Rodriguez, Moreno's companion who accompanied him to the drug sale. Presumably, Rodriguez would testify that he accompanied Moreno to the location where the sale was to occur and when he, Rodriguez, exited the vehicle and was approached by a police officer he fled, discarding his coat which contained eight ounces of cocaine that Moreno intended for sale to Todd.

Moreno filed a discovery motion requesting that the Commonwealth produce all exculpatory evidence. He did not request the identity of any informants. Because the Commonwealth's attorney had decided not to use Todd at trial, he provided Moreno impeachment evidence only for Rodriguez. Moreno, knowing that another person was involved in the transaction, anticipated that the Commonwealth might, nevertheless, be planning to call Todd at trial. Thus, Moreno sought to have the court define and clarify on the record the Commonwealth's discovery duties. At Moreno's behest, as an addition to the discovery motion and order, the parties stipulated that the Commonwealth's duty to disclose exculpatory evidence required it to produce evidence that could be used to impeach its witnesses. The court ordered that all discovery be made prior to trial. The Commonwealth asserted that, because it did not intend to call the informant as a witness, it was not obligated to furnish impeachment evidence for the informant.

Prior to trial, the Commonwealth had provided Moreno with the criminal conviction record of Rodriguez. Moreno utilized that evidence to conduct his own pretrial investigation of Rodriguez, which revealed additional significant evidence that was used effec-

tively at trial to impeach Rodriguez. After Rodriguez testified, the Commonwealth's attorney stated his dissatisfaction with Rodriguez's testimony and with the strength of the Commonwealth's case. Investigator Wolfe, who had coordinated Todd's assistance with the police, telephoned Todd to request that he testify. Todd was immediately available. The prosecutor explained to the trial judge that "after hearing that Mr. Rodriguez's testimony was not particularly credible," Mr. Todd "agreed to come in and testify on behalf of the Commonwealth." At this point, the Commonwealth provided Moreno, for the first time, with evidence of Todd's criminal conviction record. Moreno argued that calling Todd without previously having provided this impeachment evidence violated the discovery order. Although Moreno did not directly accuse the Commonwealth's attorney of being guileful, Moreno protested the unfairness of being surprised mid-trial by calling the witness without having been provided the impeachment evidence to which he was entitled. Moreno argued that the late disclosure of the impeachment evidence prejudiced him by denying him an opportunity to investigate Todd and possibly unearth additional exculpatory evidence, as he had with Rodriguez. Moreno further argued that the undue prejudice could only be cured by excluding Todd's testimony, which he made a motion to do. Instead, the trial court granted an overnight continuance, recessing at 4:00 p.m., just before Todd testified.

The following morning, over Moreno's continued objection, Todd testified. Moreno did not request a further continuance. On cross-examination, in addition to admitting to a criminal record, Todd testified that he had an agreement with the police whereby he would arrange drug transactions in exchange for leniency in prosecuting three cocaine distribution charges pending against him and for a recommendation to expunge certain criminal records. Todd testified that, after discussing the arrangement with Investigator Wolfe, he had signed a written agreement to that effect to cooperate with the police. This written agreement had not been provided to Moreno. The Commonwealth's attorney disavowed any prior knowledge of the agreement, although Investigator Wolfe, with whom Todd worked, was integrally involved with Moreno's prosecution. The agreement was retrieved from police files during a recess and through cross-examination was introduced in evidence.

Attached to the written informant's agreement was documentation which detailed an arrangement whereby Todd was remunerated based on the number of drug transactions which he arranged that resulted in successful prosecution. Todd testified that his compensation came as forgiveness from repaying money which the authorities had previously loaned him. He testified that the amount credited on the loan depended upon the number of persons apprehended and the quantity of drugs seized. Todd denied that he received any credit against the loan for helping apprehend Moreno. He did acknowledge on cross-examination that he encouraged as many people as possible to sell as much drugs as they could to Investigator Wolfe in order to win himself favor and to earn credit against his "loans." He admitted that he was not above using deception to that end.

Defense counsel extensively used the impeachment evidence provided by the Commonwealth to cross-examine Todd in order to show prosecutorial bias by the benefits that Todd stood to receive from helping make drug arrests. Defense counsel also elicited from Todd on cross-examination, contrary to the Commonwealth's earlier representation to the court, that he had not been asked to testify, but rather was appearing against the wishes of the Commonwealth out of a personal sense of duty to his country and because it was in his "line of work" as one planning to be "a police officer next year."

### Discovery Requirement

Moreno asserts that the late disclosure of the impeachment evidence against Todd constitutes a discovery violation sufficient, in itself, to require reversal. The Commonwealth denies that a violation occurred. The Commonwealth first argues that the terms of Todd's agreement to be an informant were not discoverable under *Brady* because Todd did not agree to cooperate in this *particular* case or receive any benefit for doing so. The Commonwealth next argues that no violation occurred because the impeachment evidence was timely provided at the first practicable opportunity, which was as soon as the informant agreed to testify and as soon as the prosecutor became aware of the existence of the evidence. Both arguments are without merit.

An agreement by an informant to cooperate with the police shows a relationship existing between them. Generally, the relationship between a witness and a party to litigation is admissible to show potential bias. Bias as a form of impeachment is considered exculpatory and falls within the *Brady* requirement to disclose. *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Such evidence is evidence favorable to the accused," *Brady*, 373 U.S. at 87, since a general predisposition in favor of successful prosecution may tend to show a witness' interest in seeing a case prosecuted. "The jury's estimate of the truthfulness of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Bagley*, 473 U.S. at 676 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Thus, the informant's relationship with the prosecuting authorities should have been disclosed irrespective of whether the informant received a benefit for his participation in helping apprehend or prosecute this particular defendant. Likewise, the potential monetary gain which the informant stood to receive from his cooperation defined the scope and nature of the relationship and the potential for bias and was, therefore, discoverable.

Nevertheless, the Commonwealth is not required to disclose impeachment evidence against a person who will not be called as a witness. There is no general constitutional right to criminal discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). *Brady* recognized, however, that due process imposes upon the state an affirmative duty to disclose evidence that tends to exculpate an accused. *United States v. Kendall*, 766 F.2d 1426, 1440 (10th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986); *Fitzgerald v. Bass*, 6 Va. App. 38, 48 n.2, 366 S.E.2d 615, 620 n.2 (1988), *cert. denied*, 493 U.S. 945 (1989). However, the Commonwealth is under no duty to disclose the names of potential witnesses, *Watkins v. Commonwealth*, 229 Va. 469, 479, 331 S.E.2d 422, 430-31 (1985), *cert. denied*, 475 U.S. 1099 (1986); *Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied*, 435 U.S. 930 (1978), except where the potential witness has exculpatory evidence. *See Bagley*, 473 U.S. at 697; *Keener v. Commonwealth*, 8 Va. App. 208, 212-13, 380 S.E.2d 21, 24-26 (1989)(duty to disclose identity of informant who was a participant, rather than a "tipster," in arranging drug transaction where entrapment was defense). Moreover, the Commonwealth

has the limited right not to disclose the identity of informants who are not to be called as witnesses, even though they have relevant and material evidence, provided that the identity is not required in order to obtain exculpatory evidence. *Gray v. Commonwealth*, 233 Va. 313, 328, 356 S.E.2d 157, 165, *cert. denied*, 484 U.S. 873 (1987); *see Roviaro v. United States*, 353 U.S. 53 (1957); *but see State v. Mansfield*, 332 S.E.2d 862, 865-66 (W. Va. 1985)(state adopted procedure for an *in camera* review requiring disclosure of informant's identity and evidence). Thus, the Commonwealth is not required to disclose a potential witness' identity simply on the basis that a possibility exists that the witness may be called to testify because of the vagaries of trial if, in fact, the Commonwealth in good faith expects not to call the person as a witness. Accordingly, the Commonwealth is not required to furnish exculpatory impeachment evidence on the contingency that a witness may be called to appear.

█ Trial courts must, however, be sensitive to pernicious trial tactics used as a subterfuge to circumvent required discovery. Where the Commonwealth's attorney knows that an informant's appearance as a witness is impending, or intends in all likelihood to call the witness, the prosecutor may not deny his or her intention to call the witness as a pretext to avoid discovery. A.B.A. Standards, *The Prosecution Function* § 3:11 (Approved Draft, 1971); Model Code of Professional Responsibility, DR 7-103(B)(1979); Virginia Code of Professional Responsibility, DR 8-102(A)(4), DR 7-105(C)(5), DR 7-102(A)(8), DR 1-102(A)(4). Courts have the responsibility to monitor the conduct of those attorneys who appear before them and assure adherence to those professional standards. Rules of The Supreme Court of Virginia, Pt. 6, § III Canon 3(B)(3).

█ Where a witness is expected to testify, impeachment evidence known to the Commonwealth must be disclosed. A defendant's constitutional due process right to a fair trial includes the right to call for evidence in his favor. *Bagley*, 473 U.S. at 676; *see also Stover v. Commonwealth*, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971), *cert. denied*, 412 U.S. 953 (1973); Va. Const. art. I, § 8. Due process seeks to prevent a miscarriage of justice by ensuring to the defendant a fair and impartial trial, *see Bagley*, 473 U.S. at 676, thereby assuring "the justice of the finding of guilt." *United States v. Agurs*, 427 U.S. 97, 112 (1976). A prosecutor

may not avoid this discovery requirement by strategically mischaracterizing a witness held in abeyance as a "potential" witness.

## Timely Disclosure

■ The constitutional right to receive exculpatory evidence is not fulfilled, and a prosecutor's duty is not satisfied, simply by disclosure; timely disclosure is required. *Gilchrist v. Commonwealth*, 227 Va. 540, 547, 317 S.E.2d 784, 787 (1984); *Lomax v. Commonwealth*, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984). "This right guarantees an accused sufficient time to investigate and evaluate the evidence in preparation for trial." *Id.* Where a defendant is forced, to his prejudice, to proceed ill prepared or in undue haste because of the prosecutor's untimely disclosure, his constitutional right is impaired, and his conviction must be reversed. *Gilchrist*, 227 Va. at 547, 317 S.E.2d at 787-88; *Lomax*, 228 Va. at 172-73, 319 S.E.2d at 766; *see Agurs*, 427 U.S. at 108 (where a breach of the prosecutor's constitutional duty to disclose deprives the defendant of a fair trial, the verdict must be set aside).

## Prejudice

■ Late disclosure does not take on constitutional proportions unless an accused is prejudiced by the discovery violations depriving him of a fair trial. So long as exculpatory evidence is obtained in time that it can be used effectively by the defendant, and there is no showing that an accused has been prejudiced, there is no due process violation. *Read v. Virginia State Bar*, 233 Va. 560, 564, 357 S.E.2d 544, 546-47 (1987). It is the defendant's ability to utilize the evidence at trial, and not the timing of the disclosure, that is determinative of prejudice. *See Robinson v. Commonwealth*, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986). Therefore, we hold that Moreno's constitutional right to discovery was not violated *per se* by late disclosure.

■ Similarly, a prosecutor acting with due diligence does not breach an accused's constitutional right, and a discovery violation is not committed, where the exculpatory evidence is disclosed as soon as it is known to or received by the prosecution, regardless of at what point in the proceedings the exculpatory evidence is disclosed. *Bennett v. Commonwealth*, 236 Va. 448, 467, 374 S.E.2d

303, 315 (1988), *cert. denied*, 490 U.S. 1028 (1988). However, information known to the police is information within the Commonwealth's knowledge and the prosecutor is obliged to disclose regardless of the state of his actual knowledge. *Fitzgerald v. Bass*, 4 Va. App. 371, 382-84, 358 S.E.2d 576, 582-83 (1987) The Commonwealth is, therefore, not excused from its delay in furnishing Moreno with Todd's written informant's agreement and related documentation merely because the prosecutor lacked personal knowledge of the existence of the agreement. Moreover, the investigator who recruited Todd as a police informant also actively assisted the Commonwealth's attorney in prosecuting the case.

Aside from Moreno's argument that late disclosure was *per se* prejudicial, he argues that the Commonwealth placed him in an uncurable prejudicial predicament through its delay in disclosing the exculpatory impeachment evidence. He contends that if he had asked for a continuance of any length in order to evaluate and further investigate or develop this evidence, he would have risked having the weak prosecution evidence from Rodriguez grow stale in the minds of the jurors, leaving the more incriminating surprise testimony of Todd fresh in their memory. Yet, if he declined or was denied a longer continuance, he would lose the benefits which an independent investigation might have yielded. According to Moreno, this dilemma was particularly compelling because Todd's testimony was crucial to the Commonwealth and to the defense. Where the credibility of the witness is critical to both, the opportunity of the defense to investigate and present impeaching evidence takes on added significance. Thus, argues Moreno, the Commonwealth's late disclosure forced him into a Hobson's Choice of either foregoing his trial advantage or foregoing the opportunity to utilize the discovery to which he was entitled. He argues that the state of the law concerning untimely discovery, which requires a defendant to show prejudice in order to be reversible error, unfairly places a nearly impossible burden on the wronged party to show he was prejudiced by not having had additional time to utilize the information. *See Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied*, 435 U.S. 930 (1978). Therefore, he argues that, although the burden of proof should be imposed on the party violating the discovery duties, nevertheless, prejudice should be inferred in a case such as this where the credibility of Rodriguez and Todd was critical to the prosecution. Moreno contends that, because he was

able effectively to impeach Rodriguez with evidence obtained by a thorough investigation, it should be apparent from Todd's prior life style, his drug involvement, his prior convictions, and his admitted previous association with Rodriguez, that fertile grounds exist which would yield impeachment evidence. He points to what he perceives as inconsistencies or weaknesses in the Commonwealth's case as making it obvious that an investigation would have provided exculpatory impeachment evidence against Todd. Moreno urges that his having shown such a high likelihood that the late discovery prevented him from better being able to defend himself is the most that can or should be expected in order to show prejudice and a due process violation. He says that had he had the additional time to investigate or utilize the information in a timely fashion, he would have better been able to establish to the jury's satisfaction that the drug transaction did not involve him, but was between Todd and Rodriguez, who possessed the drugs. The primary thrust of Moreno's argument is that the standard of review requiring a defendant to show prejudice should be abandoned. That issue, however, is not before us on this appeal. No doubt, the degree of effectiveness with which discovered evidence can be used is a factor to be considered in determining whether a defendant has been prejudiced. We are not unmindful of the consternation which late disclosure causes. Nevertheless, where an accused receives information before or at trial and is able to use it effectively, and is not otherwise able to demonstrate prejudice from the late disclosure, the discovery violation has not deprived him of a fair trial.

Moreno's argument raises the question whether an *in camera* identification of confidential informants and disclosure of their pertinent evidence, including their participation in the transaction or the evidence available to impeach them, might be a procedure which would avoid or minimize the potential for abuse surrounding the use of confidential informants. *See Mansfield*, 332 S.E.2d at 865-66; *cf. Keener*, 8 Va. App. at 213-14, 380 S.E.2d at 26; *Read*, 233 Va. at 564, 357 S.E.2d at 546-47. That is a question for the legislature, not Virginia's appellate court. Moreno's argument that additional time or an earlier disclosure might have revealed additional exculpatory evidence is conjectural and, thus, does not rise to the level of a due process violation. *Lowe*, 218 Va. at 679, 355 S.E.2d at 118.

Moreno effectively presented the evidence of Todd's criminal record which was provided him and of the informant's agreement which counsel skillfully obtained that tended to impeach Todd. He "successfully adduced almost everything that he feared he would not be able to develop." *Robinson*, 231 Va. at 152, 341 S.E.2d at 165 (1986). Moreno introduced no evidence post verdict that he had uncovered that might have been obtained and been used at trial had he been furnished earlier Todd's criminal record or the informant's agreement. Todd was "open and candid" regarding his agreement to be a drug informant for the Commonwealth, and Moreno effectively utilized the impeachment evidence, despite its untimeliness. *See id.* Moreno cannot provide specific evidence of how he was prejudiced by not receiving timely disclosure of the information. The remedial relief to be granted by the trial court following a discovery violation or upon the late disclosure of evidence is within the trial court's discretion and will not be disturbed on appeal unless plainly wrong. Code § 19.2-265.4; *see Lomax*, 228 Va. at 172, 319 S.E.2d at 765. Where no prejudice has been shown by permitting the witness to testify after the late disclosure of the discoverable evidence, the trial court does not err by admitting the evidence after granting a continuance. *See Davis v. Commonwealth*, 230 Va. 201, 204, 335 S.E.2d 375, 377-78 (1985); *Naulty v. Commonwealth*, 2 Va. App. 523, 528, 346 S.E.2d 540, 543 (1986). We hold that the trial court did not err in refusing to exclude the informant witness' testimony for reasons of prejudice.

*Affirmed.*

Baker, J., and Keenan, J., concurred.