COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


BEVERLY ANN MONROE

v.          Record No. 2604-92-2          MEMORANDUM OPINION[*]
                                    BY JUDGE SAM W. COLEMAN III
COMMONWEALTH OF VIRGINIA                      MAY 2, 1995


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

Peter D. Greenspun (Gary Moliken; Thomas Peter Mann;
Peter D. Greenspun & Associates, P.C., on briefs),
for appellant.

John H. McLees, Jr., Assistant Attorney General
(James S. Gilmore, III, Attorney General, on brief),
for appellee.


Beverly Ann Monroe was convicted in a jury trial of first-degree murder and use of a firearm in the commission of a felony. She was sentenced to twenty years in the penitentiary for the murder and two years for the firearm conviction.

She raises five issues on appeal. She contends that the trial court erred by: (1) failing to suppress her involuntary statements to a police officer, (2) advising the jury that her statements were voluntary, (3) admitting her statements taken in violation of her Sixth Amendment right to counsel, (4) allowing testimony of a witness to be admitted in evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and (5) denying her motions to strike the evidence and to set aside the jury

    [*] Pursuant to Code § 17-116.010 this opinion is not designated for publication.

verdicts. For the following reasons, we affirm the judgments of the trial court.

On the morning of March 5, 1992, Roger de la Burde, was found dead in his home on his estate in Powhatan County. He died from a single gunshot wound to the head, inflicted by a large caliber handgun, which was found beside de la Burde's hand. The estimated time of his death was 10:35 p.m. on March 4, 1992.

Beverly Monroe, the appellant, had known de la Burde for thirteen years. She had been his lover for eleven years. During the investigation of de la Burde's death, it first appeared to the authorities, based upon Monroe's words and actions, that when she had arrived at de la Burde's home on the morning that he was found dead, she had no prior knowledge that de la Burde might be dead. However, on March 26, Monroe told a Virginia State Police investigator that she remembered being at de la Burde's home on the night he died and falling asleep opposite where de la Burde was resting on a sofa. She told the officer she remembered being suddenly awakened by a loud noise. Finding de la Burde dead on the sofa, she said she left the house in shock.

On June 3, while meeting with the same investigator, she recanted her earlier statement about being with de la Burde when he died and said she thought her recollections were a dream. Later, Monroe signed a written statement in which she again acknowledged that she was present at de la Burde's home when she heard a loud noise, awoke, and found de la Burde dead.

I.

Monroe first contends that the trial court erred by
admitting the various statements that she made to the police
investigator on March 26 and June 3 because the statements were
involuntary.

At trial, Monroe filed the following motion to suppress the
statements:

> This day came the Defendant, Beverly A.
> Monroe, by counsel, and moved the Court to
> suppress any and all statements that she made
> to State Police Investigator David Riley on
> the grounds that she was not advised of her
> constitutional rights at a time when the
> investigation had focused on her and the case
> was in the accusatory stage, which was
> contrary to the mandates of Miranda v.
> Arizona, 304 U.S. 436 (1966), the Fifth and
> Fourteenth Amendments of the Constitution of
> the United States as well as Article I,
> Section 8 of the constitution of the
> Commonwealth of Virginia.

After the verdicts, Monroe moved to set aside the jury's
verdicts, which motion stated:

> 1. That the Court improperly overruled
> the Motion to Suppress filed by the Defendant
> and admitted the statement of Ms. Monroe
> taken on June 3, 1992 when the investigation
> was clearly in the accusatory stage and the
> Defendant considered herself in custody and
> at which time she was not advised of her
> constitutional rights by Investigator David
> Riley.

At trial when Monroe's statements were presented into
evidence, she again objected on the same ground set forth in the
written motions, which was that she was not informed of her
constitutional rights to counsel and to refuse to answer

-3-

questions during a custodial interrogation.

Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal.  Campbell v. Commonwealth, 12 Va. App. 476, 489, 405 S.E.2d 1, 2 (1991).  A trial court must be alerted to the precise "issue" to which a party objects.  See Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 524-25 (1992).  The objecting party has a duty "to state the grounds of his objection so that the judge may understand the precise question or questions he is called upon to decide.  The judge is not required to search for objections which counsel have not discovered, or which they are not willing to disclose."  Jackson v. Chesapeake & Ohio Ry. Co., 179 Va. 642, 651, 20 S.E.2d 489, 492-93 (1942); Simmons v. Commonwealth, 6 Va. App. 445, 450, 371 S.E.2d 7, 10 (1988).

At trial, Beverly Monroe's motions and objections to the statements were based solely upon the ground that the statements were obtained during a custodial interrogation without being apprised of her Miranda rights.  Now, for the first time on appeal, she argues that the statements were factually involuntary.  Whether an individual is in custody for the purposes of Miranda is a distinct and separate issue from whether a statement is made voluntarily.  Because Monroe did not raise at trial the issue whether the statements were voluntary, we will not consider that question on appeal.  Whether Monroe's statement

-4-

was the "product of an essentially free and unconstrained choice," that is, whether it was voluntary, was not raised. The trial judge did not consider or rule upon that issue. Without the issue having been raised, the Commonwealth had no reason or opportunity to develop the evidence on that question. Thus, Rule 5A:18 precludes consideration of the issue of voluntariness of the statement. No good cause exists, nor do the ends of justice require that we address the question on appeal. See Mounce v. Commonwealth, 4 Va. App. 433, 435-36, 357 S.E.2d 742, 744 (1987).

## II.

The appellant next contends that the court improperly told the jury that her statements to the police officer were voluntary, rather than allowing the jury to consider and make that determination. At trial, Monroe objected to the admission into evidence of a statement, which was written by Detective David M. Riley allegedly recounting Monroe's verbal account to him, and signed by the appellant. The objections were that the detective was "testifying in narrative form," that his testimony and the statement were hearsay, and the signed document was not a "statement" from the accused. The following exchange took place:

> MR. JANUS: I think the objection should be partially overruled on the representation she gave a written statement.
>
> I submit to the Court she did not give a written statement.
>
> THE COURT: Call it what you want, I am going to let it come in. I think it's a statement, apparently one that he wrote and she initialed or something.

-5-

MR. JANUS: Yes, sir, he wrote it out asked her to sign it. Told her.

THE COURT: We will have it before the jury and they can call it what they would like. One written by him, initialed by her or whether it is by her.

\*　　\*　　\*　　\*　　\*　　\*　　\*

THE COURT: I don't think there is any reason to go further without the jury being here. I understand what the proffer is, and all the proffer has been to all these things outlined to her, and she responded.

I think it's a statement, voluntary statement. I have already ruled on that. It's admissible.

I want the witness to proceed.

The appellant contends that the trial judge's comment, "I think it's a statement, voluntary statement," improperly instructed the jury that they were required to find that Monroe's statement was voluntary. The appellant did not, however, object to the trial court's remarks. One purpose of the contemporaneous objection rule is to enable trial courts to correct errors that may occur during trial. See Mounce, 4 Va. App at 436, 357 S.E.2d at 744. Although the appellant objected to the introduction of the statement into evidence, she did not object to the trial judge's comment.

On appeal, we consider only those issues for which a contemporaneous objection is made, except for good cause shown or when necessary to avoid a miscarriage of justice. Rule 5A:18; Knight v. Commonwealth, 18 Va. App. 207, 216, 443 S.E.2d 165, 170 (1994). Because the appellant did not object to the trial judge's comment, and because no good cause exists to consider the

issue, nor must we do so to attain the ends of justice, we are procedurally barred from reviewing whether the comment was proper.

III.

Monroe next contends that she was denied her Sixth Amendment right to counsel. She asserts that during the June 3 meeting with Investigator Riley, the Commonwealth had moved beyond the investigatory stage because the Commonwealth's attorney had made the decision to indict her although no formal charges had been lodged.

On June 3, 1992, Officer Riley arranged to meet with Beverly Monroe at a park. Investigator Riley told her that the Commonwealth's attorney was going to indict her. During this meeting, Monroe gave the officer the statement which she contends should have been suppressed because she contends it was made when she was entitled to and denied counsel.

A defendant's Sixth Amendment right to counsel does not attach until a prosecution is commenced "by way of formal charge, preliminary hearing, indictment, information or arraignment." Tipton v. Commonwealth, 18 Va. App. 832, 835, 447 S.E.2d 539, 541 (1994) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)). A police officer arranging to meet with a suspect and informing the suspect that she will be indicted on a future date does not commence a criminal prosecution. Therefore, because no formal prosecutorial proceeding had been initiated, no Sixth Amendment

–7–

right to counsel existed.

                                IV.

Monroe next contends that the trial judge erred by admitting into evidence the testimony of Zelma Smith, who testified that Monroe had contacted her ten months before de la Burde's death to inquire how Monroe could obtain an unregistered firearm. The appellant contends that the testimony of Zelma Smith was irrelevant and prejudicial and improperly admitted. We disagree.

Evidence must be relevant to be admissible. Hughes v. Commonwealth, 16 Va. App. 576, 602, 431 S.E.2d 906, 922 (1993) (Coleman, J., concurring and dissenting) (aff'd en banc, 18 Va. App. 510, 446 S.E.2d 451 (1994)). In order to be relevant, evidence must tend to prove a material fact or element of the charged offense. Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986). Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is admissible. Epperly v. Commonwealth, 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982). Evidence which is relevant is admissible unless its prejudicial effect outweighs its probative value. Wilkins v. Commonwealth, 18 Va. App. 293, 298, 443 S.E.2d 440, 443 (1994) (en banc). The decision of a trial court balancing probative value of evidence against its prejudicial tendency will not be disturbed on appeal absent a clear abuse of discretion. Ferrell v. Commonwealth, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990).

                                -8-

Zelma Smith's testimony proved that within a time period relatively close to when Roger de la Burde was murdered, and at a time when Monroe had a reason or motive for wanting to do him harm, she inquired from a relative stranger how and where she could obtain an untraceable handgun. The evidence was relevant because it showed that Monroe had a desire and had made an effort to obtain a firearm for some purpose. The fact that Monroe sought to obtain a deadly weapon that could not be traced to her was relevant to prove that she attempted to obtain the means to inflict death or serious bodily harm to another at a time when she had a reason or motive for wanting to do so. The fact that she was present at the time of de la Burde's death and had given false and conflicting accounts of what occurred tends to enhance the relevance of the evidence. The trial court did not abuse its discretion by admitting the testimony of Zelma Smith that Monroe attempted to purchase an untraceable, concealable handgun within ten months of Roger de la Burde's murder.

Monroe next contends that Zelma Smith's testimony should have been excluded because the Commonwealth failed to disclose during discovery, in violation of Brady v. Maryland, 373 U.S. 83 (1963), the terms of a bargain between the Commonwealth and Smith, a convicted felon, that she would not be prosecuted for possessing a firearm.

No general constitutional right to discovery exists in a criminal case. Weatherford v. Bunsey, 429 U.S. 545, 555 (1977).

However, the Commonwealth has a duty to assure that justice is served in prosecuting every criminal case, and in furtherance of that duty, the Commonwealth must disclose to a defendant exculpatory evidence which it has. Brady, 373 U.S. at 87. A criminal prosecution is not a debate or an academic exercise, and the state cannot withhold evidence that tends to exculpate or is favorable to an accused. Id.

"Bias as a form of impeachment is considered exculpatory and falls within the Brady requirement to disclose." United States v. Bagley, 473 U.S. 667, 676 (1985). An agreement between a witness and the prosecuting authorities shows a relationship that has the potential for bias; therefore, proof of the terms of an agreement between a witness and the Commonwealth is admissible for that purpose. Moreno v. Commonwealth, 10 Va. App. 408, 415, 392 S.E.2d 836, 842 (1990).

Nevertheless, where there has been a failure to disclose discoverable evidence, an appellant must affirmatively show how he or she was prejudiced by the Commonwealth's failure to disclose exculpatory evidence before the violation is reversible error. Stotler v. Commonwealth, 2 Va. App. 481, 484, 346 S.E.2d 39, 40-41 (1986).

> Late disclosure does not take on
> constitutional proportions unless an accused
> is prejudiced by the discovery violations
> depriving him of a fair trial. So long as
> exculpatory evidence is obtained in time that
> it can be used effectively by the defendant,
> and there is no showing that an accused has
> been prejudiced, there is no due process
> violation. It is the defendant's ability to

> utilize the evidence at trial, and not the
> timing of the disclosure, that is
> determinative of prejudice.

Moreno, 10 Va. App. at 417, 392 S.E.2d at 842.  See Davis v. Commonwealth, 230 Va. 201, 204-05, 335 S.E.2d 375, 377-78 (1985).

Beverly Monroe has made no showing as to how she was prejudiced by the late disclosure at trial during Zelma Smith's testimony of the fact that Zelma Smith had an agreement with the Commonwealth that she would not be prosecuted for possessing a firearm as a convicted felon.  After the prosecutor elicited from Smith the fact that she had an agreement with the Commonwealth and the details thereof, the appellant did not object to Zelma Smith's testimony.  Insofar as the record indicates, Beverly Monroe was able to utilize the exculpatory evidence elicited by the Commonwealth concerning the terms of the agreement and the fact that Smith was a convicted felon for the purposes of impeachment, the same as had the evidence been produced during discovery.  See Robinson v. Commonwealth, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986).  We do not condone discovery violations, and when they occur, trial courts should impose appropriate sanctions even when the violation does not require that evidence be suppressed.  However, nothing in the record leads us to conclude that had the defense known earlier that Smith would be a witness and known the terms of the agreement, the defense could have used that evidence more effectively or meaningfully.  Accordingly, the record does not show that Monroe was prejudiced

by the Commonwealth's failure to timely disclose the exculpatory evidence.

Monroe contends that the evidence is insufficient as a matter of law to support her convictions. When reviewing the sufficiency of the evidence, an appeals court discards all evidence of the accused in conflict with the credible evidence of the Commonwealth and regards as true all credible evidence favorable to the Commonwealth, according to it all reasonable inferences that may be drawn therefrom. Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), cert. denied, 450 U.S. 1029 (1981). The evidence is sufficient for the jury to have concluded beyond a reasonable doubt that Roger de la Burde was murdered and that Beverly Monroe was the murderer.

The jury necessarily found that de la Burde's death was a homicide and not a suicide. Forensic experts testified that when the handgun was fired, the muzzle of the gun was near, but not touching, the far upper corner of de la Burde's forehead, so that the bullet travelled in a downward trajectory. The medical examiner testified that the wound was located in a place uncommon for a self-inflicted suicide shot and that, due to the location of the wound and the position of how the gun would have been fired, most likely, de la Burde did not fire the weapon. According to evidence of de la Burde's usual sleeping position, his body was in the position as though he were sleeping when he died.

Other evidence showed that de la Burde was excited about the

possibility of fathering a child, that he was anxious to pursue a real estate deal, and that he was arranging detailed meetings and plans to take place in the days and weeks after he died. From the evidence, the fact finder could conclude that de la Burde had no reason or inclination to commit suicide and that his death was a homicide, not a suicide.

The evidence also supported the jury's finding that Beverly Monroe was the criminal agent who killed de la Burde. Monroe had been intimately involved with de la Burde for eleven years before his death. She recently had discovered that de la Burde was having an affair with a younger woman. De la Burde, who had made known his desire to have a male child, had drawn up a "baby agreement," which he had discussed with the "other" woman who was to have his son. Monroe discovered the existence of the agreement. Ten months before de la Burde's murder, Monroe had attempted to obtain an unregistered, concealable handgun.

Monroe admitted being at de la Burde's house at the time of his death, but claimed she was asleep and awoke only upon hearing the noise of the gun. She had given false and conflicting statements about having been there when de la Burde was killed. Monroe knew where de la Burde kept his handgun, the same gun with which he was shot. She knew de la Burde had been considering making a new will. On the day that the grounds keeper found de la Burde's body, Monroe had appeared at de la Burde's home indicating to the grounds keeper that she could not get de la

-14-

Burde to answer his door and could not gain entry to the house. Monroe told the grounds keeper that she had been unable to telephone de la Burde from the stable because the door was locked, but he testified that the door was never locked. The evidence also showed that Monroe had a key to de la Burde's house. The Commonwealth proved beyond a reasonable doubt that the circumstances of time, place, motive, means, opportunity, and conduct concurred in linking Beverly Monroe to the crime. See Potts v. Commonwealth, 12 Va. App. 1093, 1097, 408 S.E.2d 256, 258 (1991). The evidence is sufficient to support the appellant's convictions.

We affirm the appellant's convictions.

Affirmed.