COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Petty
Argued at Richmond, Virginia

SHIRLEY ANNE NEWMAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1774-07-4          CHIEF JUDGE WALTER S. FELTON, JR.
                                                    AUGUST 11, 2009

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Jr., Judge

Alan J. Cilman for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.

Shirley Anne Newman ("appellant") was convicted of driving under the influence of alcohol

(DUI) in violation of Code § 18.2-266. We initially address five of appellant's "questions

presented," none of which invoke assertions of error on the part of the trial court.

The Court of Appeals considers only trial court error appearing in the record. See Code

§ 17.1-412 ("A judgment, order, conviction, or decree of a circuit court . . . may be affirmed, or it

may be reversed, modified, or set aside by the Court of Appeals for *errors appearing in the record*."

(emphasis added)); see also Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10

(1989) ("our function is to review the rulings of the trial court"). We will not address a question

presented on appeal that does not identify with specificity an alleged error on the part of the trial

court, to which a timely objection was made. See Rules 5A:12(c) ("The provisions of

Rule 5A:18 shall apply to limit those questions which the Court of Appeals will rule upon on

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appeal."); 5A:20 ("The opening brief of appellant shall contain: . . . (c) [a] statement of the

questions presented with a clear and exact reference to the page(s) of the transcript, written

statement, record, or appendix where each question was preserved in the trial court.").

Because appellant's "questions presented," enumerated 1 through 5 in her opening brief and

listed immediately below, fail to allege any trial court error, we will not consider them on appeal.

See Rules 5A:12(c), 5A:20:

> 1. Does the manufacturer of the equipment used to test breath in driving under the influence cases have the right to ignore properly issued and properly served orders of the Commonwealth's courts?
>
> 2. Does this Court's decision in Ellis v. Commonwealth, 14 Va. 18, 414 S.E.2d 615, which allows defendants to challenge Commonwealth test results in drug cases, apply to defendants in driving under the influence cases?
>
> 3. May the Commonwealth contract away a defendant's rights under the Fifth and Sixth Amendments to the Constitution of the United States and Article I, Section 8 of the Constitution of Virginia by purchasing equipment, which will be used to provide evidence in criminal cases, from a company that refuses to honor court orders?
>
> 4. Is it a violation of the Establishment Clause of the First Amendment to the Constitution of the United States when the manufacturer of the equipment used to test breath in driving under the influence cases refuses to divulge to any state or Federal agency, to any court, to any defendant, to any prosecutor or to any trier of fact the information programmed into the equipment and which controls the operation of and the results obtained from the equipment[?]  Is it a further violation of law that the Commonwealth requires the courts, the prosecution, the defense and the triers of fact to take on faith alone that the information programmed into these machines is correct?[1]
>
> 5. Does the failure of the Commonwealth to obtain, to inspect, to test and to certify the information programmed into the breath

---

[1] At oral argument, appellant's counsel informed the Court that appellant's "question presented" concerning the Establishment Clause of the First Amendment to the United States Constitution was "satirical" in nature.  Rule 3.1 of the Rules of Professional Conduct states, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

testing equipment in driving under the influence cases, which information controls the operation of the equipment and the results obtained there from, violate the duties imposed on the Commonwealth to assure accuracy of such equipment under Code of Virginia, 1950, as amended, § 18.2-268.9 and reliability of such equipment under 6 VAC40-20-80?

## I. Background

"Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). We must "examine the evidence that tends to support the conviction[] and to permit the conviction[] to stand unless [it is] plainly wrong or without evidentiary support." Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998) (citing Code § 8.01-680).

So viewed, the evidence proved that on July 22, 2006, at approximately 10:15 p.m., a car driven by appellant struck the rear of a car stopped at a traffic light on Route 236 in Fairfax County. The collision forced that car to strike the car in front of it, driven by Terrence Brown. At trial, Brown stated that he had been stopped at the red light for approximately thirty seconds when he heard squealing tires immediately prior to the collision behind him. He stated that appellant got out of her car "after a while," and would not talk with him, except to repeatedly say "What happened? What happened?" Brown described appellant as "walking around in sort of a random path" until police arrived shortly after the collision.

At approximately 10:20 p.m., Fairfax County police officer Paul Pickett, a police officer with 19 years of experience, arrived at the scene. He "noticed that [appellant] was unstable on her feet," and he "smell[ed] a moderate to strong odor of alcoholic beverage coming from her person." Pickett testified that appellant "had slurred speech, glassy eyes, and dilated pupils."

- 3 -

Appellant informed Officer Pickett that she had consumed "[a] couple of glasses of wine . . . [a]bout an hour" before the collision. After appellant failed a series of field sobriety tests, Pickett took her to the Alcohol Testing Unit (ATU) at the Fairfax County Adult Detention Center for administration of a breathalyzer test to determine the level of alcohol in her system.

At the ATU, another officer, Sergeant Munday, observed appellant for the twenty-minute time period required by Department of Forensic Science (DFS) breath test procedures. He then attempted to test appellant's breath using Intoxilyzer 5000 machine number 2253, but was unable to obtain a breath test result.

Kristina Berghoffer, a breath test technician, immediately moved appellant to a different Intoxilyzer 5000, number 1538, and completed her breath test, showing appellant's blood alcohol content (BAC) to be .27 gram per 210 liters of breath (.27). At trial, over appellant's objection that Berghoffer failed to observe her for the required twenty-minute period, the trial court admitted the certificate of blood alcohol analysis from the second Intoxilyzer, number 1538.

At the conclusion of the Commonwealth's case-in-chief, the trial court denied appellant's motion to strike the Commonwealth's evidence.

Appellant testified that she had two glasses of white wine at a party about an hour before the collision. She told the trial court that the collision occurred because she was distracted by a tow truck that "came down the other side [of the road] towards [her] with lights flashing and a car damaged." She testified that her steering column airbag deployed during the collision and hit her.

Appellant testified that on the day of her arrest, prior to the collision, she was "spackling and painting in [her] home" for "[m]ost of the day" in a poorly ventilated area and without a protective mask. She also stated that she used GOJO, a cleaning product, to remove the oil-based paint from her skin.

Appellant presented expert testimony that she argued would establish that chemicals contained in the spackle, paint, and GOJO cleaner, as well as substances present in her airbag system, were present in her breath sample when she took the breath test, elevating the BAC result produced by that test.

After all the evidence had been presented, the trial court denied appellant's renewed motion to strike the Commonwealth's evidence. In finding appellant guilty of DUI, the trial court recited the evidence presented, "irrespective of any blood alcohol result," including appellant's driving behavior in striking a car stopped at a red light, her statements and behavior immediately following the collision, and Officer Pickett's testimony that appellant was "unsteady on her feet," had the smell of "alcohol about her breath and person," had "glassy eyes" and "dilated pupils," and performed poorly on the field sobriety tests. The trial court also found that appellant's BAC was .27.

## II. Analysis

On appeal, appellant contends the trial court erred by denying her motion for a mistrial and motion to dismiss the charge.

She asserts the Commonwealth failed to disclose exculpatory evidence relevant to the administration of her breath test following her arrest. She also asserts the trial court erred in admitting the breath test certificate of analysis into evidence, arguing that Berghoffer failed to observe her for the required twenty-minute period prior to the test and that the Intoxilyzer 5000 is not scientifically reliable. She asserts the trial court also erred in finding her BAC was .27, arguing that it arbitrarily rejected uncontradicted evidence that chemicals to which she was exposed on the day of her arrest, while painting and cleaning paint from her skin, as well as chemicals released when her airbag deployed, contaminated the breath sample analyzed by the Intoxilyzer. She also argues that the trial court erred by arbitrarily accepting the certificate of

analysis from the second Intoxilyzer after the test conducted on the first Intoxilyzer failed to produce a BAC test result. Finally, she contends the .27 BAC test result was "inherently unreasonable" in light of testimony concerning "her bearing and demeanor and her control of her faculties" on the night of her arrest.

## A. Exculpatory Evidence

Appellant initially contends the trial court erred by not dismissing the DUI charge, arguing the Commonwealth failed to disclose prior to trial that she was tested on two different Intoxilyzers and to provide her with testing logs and repair records for each Intoxilyzer, information she argues was exculpatory.[2]

"The Commonwealth is required to provide a defendant exculpatory evidence . . . . However, a defendant does not have a general constitutional right to discovery in a criminal case." Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)).

> So long as exculpatory evidence is obtained in time that it can be used effectively by the defendant, and there is no showing that an accused has been prejudiced, there is no due process violation. Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546-47 (1987). It is the defendant's ability to utilize the evidence at trial, and not the timing of the disclosure, that is determinative of prejudice.

Moreno v. Commonwealth, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990).

On the first day of appellant's trial, April 19, 2007, during the Commonwealth's case-in-chief, Officer Pickett testified that two different Intoxilyzers were used to test appellant. When appellant's counsel heard that testimony, he informed the trial court that Pickett's testimony was the first notice he had received that appellant was tested using two different

---

[2] The record is silent as to why appellant was unable to recall that she was tested on two separate Intoxilyzers, or being moved from one Intoxilyzer to another.

- 6 -

Intoxilyzers. He argued that the information that Intoxilyzer number 2253 was unable to produce a BAC result was exculpatory evidence and that the Commonwealth was required to provide him with the testing logs and repair records for both Intoxilyzers during pretrial discovery. The trial court ordered the trial continued to May 3, 2007 to "alleviat[e] [appellant's counsel's] concerns about the surprise of this second machine." It directed the Commonwealth to provide appellant with the repair records and testing logs for both Intoxilyzers used to test appellant.

Appellant's trial concluded on July 23, 2007.[3] At the July 23 hearing, the trial court admitted testing logs and repair records for both Intoxilyzer 2253 and Intoxilyzer 1538, which appellant introduced during her cross-examination of Robyn Thompson, a DFS Intoxilyzer 5000 instructor called as a rebuttal witness for the Commonwealth.

Assuming without deciding the repair records and testing logs for Intoxilyzer 2253 and Intoxilyzer 1538 were exculpatory evidence, we conclude there was no Brady violation, because appellant was "ab[le] to utilize th[at] evidence at trial." See Moreno, 10 Va. App. at 417, 392 S.E.2d at 842.

Appellant also contends on appeal that "[s]ubsequent to the trial, [she] discovered that other exculpatory evidence had been concealed."[4] She appended documents to the end of her opening brief, documents not contained in the record, as evidence of this claim.

"[I]n an appellate proceeding this court sits to review and to correct errors of lower courts; [] in exercising such jurisdiction we are limited to the record of the proceedings which

---

[3] On May 3, 2007, appellant's trial was continued a second time for reasons unrelated to her argument regarding exculpatory evidence.

[4] Attached to appellant's opening brief were copies of documents submitted by DFS to the General Assembly requesting funds for statewide replacement of the Intoxilyzer 5000 machines due to their age, deterioration, and frequent repairs, calling into question their reliability. Those documents were not presented to the trial court.

occurred in the lower court and certified to us, and [] extrinsic evidence may not be received by this court to contradict or supplement the record." See Rountree v. Rountree, 200 Va. 57, 63, 104 S.E.2d 42, 47-48 (1958). Accordingly, we will not consider appellant's arguments that are based on extrinsic evidence not included in the trial court record on appeal.

### B. Certificate of Analysis

#### i.

Appellant contends the trial court erred in admitting the breath test certificate of analysis, asserting the Intoxilyzer 5000 "does not meet established scientific standards . . . as described in Daubert v. Merrell [Dow] Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire [Co.] v. Carmichael, 526 U.S. 137 (1999)."[5] Appellant did not preserve this argument for appeal. Although appellant raised this issue at trial, the trial court informed her that it would reserve judgment on the issue, and never ruled on it. Because appellant did not obtain a ruling from the trial court on this issue, "there is no ruling for us to review" on appeal. See Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

#### ii.

Appellant also argues that Berghoffer, the Intoxilyzer 5000 operator who administered the second breath test, failed to observe her for the required twenty-minute period prior to collecting her breath specimen.

Code § 18.2-268.9 provides that, "[t]o be capable of being considered valid as evidence in a prosecution under § 18.2-266 . . . , chemical analysis of a person's breath shall be performed . . . in accordance with methods approved by the [DFS]." Among the breath test procedures approved by the DFS is the requirement that "[t]he person to be tested shall be

---

[5] We note that no Virginia appellate court has adopted the standard for determining the scientific reliability of scientific evidence used by the federal courts as expressed in either Daubert or Kumho Tire. See John v. Im, 263 Va. 315, 322, 559 S.E.2d 694, 697-98 (2002).

observed for at least 20 minutes prior to collection of the breath specimen . . . . " 6 VAC 40-20-110; see Pearson v. Commonwealth, 43 Va. App. 317, 324-25, 597 S.E.2d 269, 272 (2004).

Here, the evidence established that the breath test was administered in compliance with the twenty-minute observation period required by Code § 18.2-268.9. The attestation clause that was part of the certificate of analysis admitted into evidence stated that appellant's breath test "was conducted in accordance with [DFS] specifications," one of which provides for the twenty-minute period of observation. Additionally, the testimony of Berghoffer, who administered the breath test, established that Sergeant Munday observed appellant for the required twenty minutes prior to the attempted test on the first Intoxilyzer before she was immediately moved to the second Intoxilyzer only a few feet away. Accordingly, we conclude the trial court did not err by admitting the certificate of analysis into evidence.

## C. Breath Test Interferants[6]

Appellant argues the trial court erred in finding her BAC was .27, arguing it "arbitrarily reject[ed]" evidence that interferants contaminated her breath sample. From our review of the record on appeal, we cannot conclude that the trial court "arbitrarily reject[ed]" appellant's evidence.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "[I]t is the province of the [trier of fact], rather than an appellate court, to weigh the facts and to judge the credibility of the

_____

[6] Evidence at trial established that an "interferant" is a chemical that absorbs light at the same wavelengths light is absorbed by ethanol, thereby having the potential to cause the Intoxilyzer to report a higher quantity of ethanol in a suspect's breath sample than the sample actually contains, producing an artificially high BAC result.

various lay and expert witnesses." Commonwealth v. Presley, 256 Va. 465, 470, 507 S.E.2d 72, 75 (1998). "The factual determinations of the trial court, like those of a jury, are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.'" Mercer v. Commonwealth, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000) (quoting Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991)).

Appellant testified that on the day of her arrest, she had been "spackling and painting in [her] home" for "[m]ost of the day" in a poorly ventilated area and without a protective mask. She also stated that she used GOJO, a cleaning product, to remove the oil-based paint from her skin, after she arrived at the party where she consumed wine.

We find no support in the record for appellant's assertion that the trial court "arbitrarily reject[ed]" evidence that her breath test result was elevated as a result of her earlier use of spackle, paint, and GOJO cleaner, and by the deployment of her airbag after her collision. Appellant's argument presupposes that chemicals present in her airbag system, and in the products she stated she used on the day of her arrest, were present in her breath at the time she took the breath test, and in sufficient quantities to interfere with the test results, an assertion the trial court was free to reject.

Richard McGarry, a forensic toxicologist who testified for appellant, opined that certain chemicals would be in appellant's "system" and on her breath when she took the breath test. His opinion was dependent on the assumption that the trial court found appellant's testimony to be credible. The trial court was free to accept or reject all or part of appellant's testimony regarding her use of specific painting and spackle products for "[m]ost of the day," ending at 5:00 p.m., on the evening of her arrest, that she washed paint off of her body with GOJO cleaner at the party site, and that an airbag in her steering column, which deployed following her collision, contained substances that would inflate her breath test result. See Hopkins v. Commonwealth, 230 Va.

280, 293, 337 S.E.2d 264, 272 (1985).  Appellant's expert did not quantify the amount of each chemical that, accepting her evidence, would necessarily remain or be present in appellant's breath sample at the time she took the breath test, and the degree to which those variables would affect the test results.

Dr. Robert Cozzens, offered as a chemistry and Intoxilyzer 5000 expert,[7] testified for appellant.  He opined that certain chemicals present in the paint, spackle, and GOJO cleaner appellant said she used on the day of her arrest could interfere with the Intoxilyzer's analysis of her breath specimen.  His opinion was dependent on the trier of fact accepting the credibility of appellant's testimony that those chemicals were present in her system and in her breath sample at the time of her testing in sufficient quantities to artificially elevate the test results.

Robyn Thompson, a DFS Intoxilyzer 5000 instructor, testified that the Intoxilyzer 5000 is equipped with five filters to prevent certain of the chemicals appellant contends were in her breath sample from interfering with the breath test.

From this evidence, we cannot conclude the trial court "arbitrarily reject[ed]" appellant's evidence offered to prove that interferants contaminated her breath sample so as to make the test results unreliable.

### D.  Reliability of the Intoxilyzer Machine that Produced the BAC Result

Appellant also contends the trial court erred by "arbitrarily accepting" the results of appellant's breath test contained in the certificate of analysis, when the breath test attempted on the first Intoxilyzer was unable to produce a BAC result.  She argues that because the evidence

---

[7] Dr. Cozzen stated that his expertise regarding the Intoxilyzer 5000 derived from his review of the "patents and the handbooks that go with the instrument - - and an understanding of infrared spectroscopy."  He testified that he had never used or physically examined an Intoxilyzer 5000.  The trial court overruled the Commonwealth's objection to Dr. Cozzen's qualification as an Intoxilyzer 5000 expert, stating that his lack of direct experience with the machine would "go to the weight of the evidence."

proved that the Intoxilyzer that produced the breath test certificate of analysis was repaired four days prior to her breath test, the trial court should have concluded that that Intoxilyzer was not reliable, and the test result was invalid.

However, the attestation clause of the certificate of analysis signed under oath by Berghoffer, and admitted into evidence, stated that the breath test "was conducted in accordance with the [DFS] specifications" and that "the equipment on which the breath test was conducted ha[d] been tested within the past six months and found to be accurate." Accordingly, since the breath test was conducted on an Intoxilyzer certified to be accurate pursuant to Code § 18.2-268.9, and attested as being operated in accordance with DFS specifications, we cannot conclude that the Intoxilyzer used to test the alcohol content of appellant's breath was unreliable or that the trial court "arbitrarily accept[ed]" the result of an unreliable Intoxilyzer.

### E. Appellant's Demeanor and Control of her Faculties

Appellant contends "the finding of a blood alcohol level of [].27 [was] inherently unreasonable and therefore insufficient as a matter of law," "[gi]ven [her] ability to perform on field sobriety tests, her ability to engage in polite, complex conversation, her bearing and demeanor and her control of her faculties, as well as the scientific and other evidence presented and uncontradicted in this case."

Appellant's contention misstates the evidence in the record as viewed in the light most favorable to the Commonwealth. See Higginbotham, 216 Va. at 352, 218 S.E.2d at 537. Evidence in the record supports the trial court's finding that appellant was guilty of DUI, which it made "irrespective of any blood alcohol result."[8]

---

[8] The trial court's additional finding that appellant's BAC was .27 triggered the enhanced penalty provided for in Code § 18.2-270(A), pursuant to which the trial court sentenced appellant to the mandatory minimum period of ten days incarceration.

By its factual finding that appellant's BAC was .27, the trial court did not accept appellant's expert evidence regarding the reliability of the scientific process used by the Intoxilyzer 5000, nor did it accept her contention that the Intoxilyzer used to produce her breath test certificate of analysis was unreliable. We find no abuse of discretion on the part of the trial court in accepting the Commonwealth's evidence and rejecting that offered by appellant.

From this record, we cannot conclude the trial court erred in finding that appellant's BAC was .27 and in convicting her of DUI.

### III. Conclusion

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>