## Richmond

BEVERLY JOLSON BURROWS, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1439-92-2

Decided December 14, 1993

 

COUNSEL

John F. McGarvey (D. Gregory Carr, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen B. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Beverly Jolson Burrows, Jr. (Burrows) appeals from his convictions by jury in the Circuit Court of Hanover County for first degree murder and use of a firearm in the commission of a murder. Burrows alleges that the Commonwealth failed to disclose relevant information concerning a prosecution witness pursuant to a *Brady* discovery motion and thereby deprived him of due process and his right to a fair trial.[1] Because we find that the Commonwealth failed in its duty to disclose exculpatory information under the *Brady* rule, we reverse Burrows's convictions.

## I. FACTUAL BACKGROUND

Beverly and Joan Burrows, husband and wife, lived in Hanover County. Mrs. Burrows worked at Crestar Bank and developed a friendship with Edward Snowdon, a co-worker. On May 29, 1991, Snowdon received a phone call from Mrs. Burrows; sounding upset, she told Snowdon that they could not speak any more because she loved her husband. A man's voice broke into the conversation, saying, "I'm going to blow your ass away for talking to my wife."

On July 7, 1991, Burrows went to a neighbor's house and said that his wife had shot herself. Burrows told the neighbor conflicting stories about the incident and made inconsistent statements to the investigating officers. Mrs. Burrows had abrasions on her knees "where you would get them if you were kneeling."

---

[1] Burrows further alleges that perjury by this same witness during trial requires vacating his convictions and ordering a new trial; however, as resolution of his first issue mandates reversal of his conviction, we do not reach this latter matter.

Prior to trial, the trial court granted Burrows's *Brady* discovery motion. Burrows later asked for a continuance so that he could investigate the background of the Commonwealth's witnesses. In his motion, Burrows noted that the continuance was necessary in order to procure by independent means information withheld by the Commonwealth. At the hearing on his motion, Burrows stated that he required the continuance to investigate the background and criminal records of individuals he believed would testify for the Commonwealth. Burrows conceded that the Commonwealth did not have to reveal the names of its witnesses prior to trial but noted that the Commonwealth had stated that it would present two witnesses who were "unknown." Burrows suspected the identity of those witnesses and stated that it would take time to gather the background information. The trial court stated that a continuance on such ground would be at best speculative.[2]

At trial, the Commonwealth called numerous witnesses, including Theodore Fore. Fore testified that while in jail together, he and Burrows became friends. Fore stated that Burrows admitted planning and carrying out his wife's murder and spoke about the crime "virtually every day." During his testimony, Fore related intimate details of Mr. and Mrs. Burrows's life and the events that led up to the murder. On cross-examination, Fore admitted that he had previously been convicted of several felonies and was awaiting trial on a charge of breaking and entering. Fore denied that he was testifying against Burrows in exchange for leniency on the pending charges.

After his conviction, Burrows moved to set aside the verdict, alleging that Fore had failed to disclose convictions for robbery and Dyer Act violations. Burrows further alleged that numerous other charges against Fore had been "nolle prossed" in exchange for his testimony as a "professional witness for the Commonwealth." Burrows argued that the Commonwealth should have disclosed Fore's previous relationship with the Commonwealth under the *Brady* motion.

Fore's criminal transcript was presented at the hearing on the motion to set aside the verdict. Beginning in 1974 and continuing over the next eighteen years, that transcript reflects that at least forty-three felony charges against Fore were nolle prossed by the Commonwealth and that seven additional charges brought in Virginia were dismissed. Burrows asserted that the unusual number of charges that were not

---

[2] The record is unclear as to the trial court's ruling on the motion. At one point the court appeared to overrule the motion, but later indicated that it might "grant your continuance" after hearing Burrows's suppression motion on the trial date. The court did not enter an order addressing the motion.

pursued was relevant to Fore's motivation to testify as it indicated his propensity to cooperate with the Commonwealth as a witness in return for leniency. The transcript also showed fourteen felony arrests without disposition from neighboring jurisdictions, arguably indicating that these charges were also dismissed or not pursued under some bargain Fore had made with the Commonwealth.

During the hearing, the Commonwealth's Attorney stated that, although he would not characterize Fore as a "jailhouse snitch," he was aware that prosecutors in Chesterfield County had used or attempted to use Fore in that capacity. Prior to calling Fore as a witness, the Commonwealth's Attorney admitted that he obtained a copy of Fore's criminal transcript and had it available at the trial. Burrows argued that even if Fore was not one of the "unknown" witnesses, the Commonwealth's Attorney was nonetheless obliged to disclose Fore's criminal record when it became apparent that Fore would testify.

## II. COMMONWEALTH'S DUTY TO DISCLOSE EXCULPATORY INFORMATION IN CRIMINAL CASES

The suppression or withholding by the prosecution of evidence favorable to the accused after a *Brady* request violates due process when that evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. *Lowe v. Commonwealth,* 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied,* 435 U.S. 930 (1978); *see Brady v. Maryland,* 373 U.S. 83, 87 (1963). Although reversal is not required whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense," *United States v. Keogh,* 391 F.2d 138, 148 (2d Cir. 1968), reversal is the proper remedy when that evidence clearly tends to exculpate the defendant or otherwise depreciates the value of testimony or evidence central to the prosecution's case. When the "reliability of a given witness may well be determinative of guilt or innocence," evidence affecting the credibility of that witness should not be concealed by the prosecution. *Napue v. Illinois,* 360 U.S. 264, 269 (1959).

The Commonwealth does not suffer an unreasonable burden in providing the criminal background of its witnesses to the defense if required to do so after a *Brady* motion. *Fitzgerald v. Bass,* 6 Va. App. 38, 51-52, 366 S.E.2d 615, 623 (1988) (en banc), *cert. denied,* 493 U.S. 945 (1989). A general request for *Brady* material and subsequent specific requests for the opportunity to investigate the criminal background of the Commonwealth's witnesses entitles a defendant to full disclosure of the criminal record of a witness who has shown a

propensity for avoiding prosecution by testifying for the Commonwealth.

In this case, we see no reason why the Commonwealth could not have provided Burrows with information it readily obtained for its own purposes. Here, the Commonwealth, which was in the best position to know of Fore's criminal past and his apparent long standing relationship with various Commonwealth's Attorneys, failed to disclose this information to Burrows despite an implicit request for just such information.[3]

■ We do not retreat from the well established rule that there is no general constitutional right to discovery in a criminal case in this Commonwealth. *Stotler v. Commonwealth,* 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986); *see also Watkins v. Commonwealth,* 229 Va. 469, 479, 331 S.E.2d 422, 430 (1985), *cert. denied,* 475 U.S. 1099 (1986). Rather, we recognize that when a request for discovery is made, the Commonwealth has a duty to deal fairly with an accused.

Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.

*United States v. Agurs,* 427 U.S. 97, 106 (1976).

Where the criminal record of a witness for the Commonwealth indicates a real possibility of bias or a lack of credibility for that witness, the Commonwealth should take reasonable steps to facilitate defense inquiries into that record. For these reasons, the convictions are reversed and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Benton, J., and Willis, J., concurred.

---

[3] The Commonwealth as much as conceded the relevance of this information during the post-trial hearing when it suggested that Burrows's trial counsel should have asked Fore specific questions concerning his prior role as a witness for the Commonwealth. This suggests, in essence, that as an alternative to adequate discovery, the burden should be on the defense to "take shots in the dark," hoping to expose the bias of a Commonwealth's witness—a tactic both inefficient to the administration of justice and procedurally improper.