COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia

DANIEL COTTON

v.      Record No. 1272-94-2            MEMORANDUM OPINION*
                                      BY JUDGE MARVIN F. COLE
COMMONWEALTH OF VIRGINIA               JANUARY 16, 1996

             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     William R. Shelton, Judge

        Angela D. Whitley, for appellant.

        Linwood T. Wells, Jr., Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


        Daniel Cotton (appellant) appeals from a judgment of the

Circuit Court of Chesterfield County finding him guilty of

statutory burglary and arson.  On appeal, he contends that his

due process rights were violated because the Commonwealth did not

provide timely and adequate discovery pursuant to Brady v.

Maryland, 373 U.S. 83 (1963).  He further argues the trial court

erred in admitting evidence of his other crimes, by excluding his

statement to an accomplice, by refusing to permit impeachment of

a witness with a misdemeanor conviction, and in failing to strike

the evidence as to both offenses.  We agree that the Commonwealth

failed to disclose evidence material to appellant's defense, and

we reverse and remand appellant's convictions.

                              I.

        "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

_____

        *Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

On January 31, 1993, appellant quit his job at a bar after an argument with his employer, Theodore Kastanos. Appellant left the bar that night with Clifford Carnes, who also worked at the bar. Appellant said Kastanos would "burn in hell" and "God [was] going to punish [him]."

Later that night, Carnes and appellant went to a service station to purchase gas. Appellant pumped gasoline into Carnes' car. Carnes testified that after they left the gas station, he noted appellant covering something up on the floor board. Appellant had a jar of gasoline on the floor of the car. At appellant's request, Carnes drove to Kastanos' house, and appellant threw the jar into the house. Carnes saw an orange glow about the house.

A fire fueled by an accelerant was discovered at the house, which was owned by Kastanos' mother. The morning after the fire, a police officer observed a person resembling appellant drive by the Kastanos home.

Tyrone Morris, who was incarcerated with appellant before trial, testified as a rebuttal witness on behalf of the Commonwealth. Morris testified that appellant admitted throwing a jar of gasoline into Kastanos' house. According to Morris, appellant had said that he intended to persuade his girlfriend and brother to testify on his behalf and give him a false alibi.

## II.

Before trial, appellant filed a motion for discovery,

requesting that the Commonwealth be required to provide him with information pursuant to Brady, including "all consideration or promises of consideration given to or on behalf of any potential witness or expected or hoped for by any witness" and "any and all other records and/or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the Commonwealth's evidence or which arguably could lead to such records or information." Although the trial court did not enter an order upon the motion, the court did state at a pretrial hearing that the Commonwealth was obligated to answer the discovery request and would "be handcuffed" at trial by what it did not reveal.[1]

Immediately before Morris testified, the prosecutor revealed to the defense that he had agreed to write to the parole board on Morris' behalf. In the letter, the prosecutor was to indicate that Morris had been cooperative in the proceeding against appellant. The prosecutor further stated that Morris, at the time of trial, was serving a sentence for a revocation of his parole. Appellant's counsel used this information in her cross-examination of Morris.

At his sentencing hearing, appellant introduced evidence tending to affect Morris' credibility. Officer Brian Price testified that he filed a disciplinary report against Morris for

---

[1]Although it is advisable for the trial court to enter an order defining the limits of discovery, the absence of such an order does not preclude an appellate court from determining whether the Commonwealth has responded appropriately to a defendant's motion for discovery. See Hackman v. Commonwealth, 220 Va. 710, 713, 261 S.E.2d 555, 557-58 (1980).

spitting on appellant while in jail.  Vincent Vaughan and James Rose, both of whom were incarcerated with appellant and Morris, observed Morris reading the transcript of the statement Carnes gave to the police.  Morris had said he would do anything to see appellant "go down."  Vaughan and Rose testified that appellant consistently denied starting the fire.  Furthermore, when appellant was moved to a different tier of the jail, Rose heard Morris comment that he would make sure that appellant suffered.  Prior to sentencing, appellant filed a motion for a new trial, contending that the Commonwealth had violated its duty to disclose in a timely fashion Morris' criminal record and relationship with the Commonwealth.  On February 25, 1994, more than twenty-one days past the date of the sentencing order and after appellant had noted his appeal to this Court, the trial court ordered that the Commonwealth's failure to provide adequate discovery had denied appellant the opportunity meaningfully to cross-examine the Commonwealth's witnesses, but that the court was without jurisdiction to grant appellant a new trial.

### III.

Appellant argues that his rights to due process were violated because the Commonwealth did not timely reveal, among other things, Morris' relationship with the prosecution and his criminal record.  He contends that the Commonwealth's late disclosure of the information was prejudicial to him because it denied him the opportunity to investigate effectively other evidence he could have used to impeach Morris, such as that he presented at sentencing.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady, 373 U.S. at 87. "Disclosure is required where the evidence is both (1) favorable to the defendant, and (2) material either to guilt or to punishment." Humes v. Commonwealth, 12 Va. App. 1140, 1142-43, 408 S.E.2d 553, 554 (1991). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

"Where a witness is expected to testify, impeachment evidence known to the Commonwealth must be disclosed." Moreno v. Commonwealth, 10 Va. App. 408, 416, 392 S.E.2d 836, 842 (1990). In fact, reversal of the defendant's conviction is the proper remedy where evidence withheld by the prosecution "clearly tends to exculpate the defendant or otherwise depreciates the value of testimony or evidence central to the prosecution's case. When the 'reliability of a given witness may well be determinative of guilt or innocence,' evidence affecting the credibility of that witness should not be concealed by the prosecution." Burrows v. Commonwealth, 17 Va. App. 469, 472, 438 S.E.2d 300, 303 (1993) (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).

Morris' testimony provided a critical link in the chain of evidence connecting appellant to the charged offenses. Morris' testimony strengthened that of Carnes, a witness with

questionable credibility, considering his own involvement in the incident and his agreement to cooperate with the Commonwealth in the proceedings against appellant. For this reason, Morris' credibility was a significant factor in determining appellant's guilt, and the Commonwealth had a duty to disclose information appellant could have used to impeach him.

> Furthermore,
>> [t]he constitutional right to receive exculpatory evidence is not fulfilled, and a prosecutor's duty is not satisfied, simply by disclosure; timely disclosure is required. "This right guarantees an accused sufficient time to investigate and evaluate the evidence in preparation for trial." Where a defendant is forced, to his prejudice, to proceed ill prepared or in undue haste because of the prosecutor's untimely disclosure, his constitutional right is impaired, and his conviction must be reversed.

Moreno, 10 Va. App. at 417, 392 S.E.2d at 842. In assessing whether appellant was prejudiced, "we compare the evidence adduced at trial with what [appellant] contends could have been adduced at trial" had the information been disclosed at an earlier time, and determine if that evidence would have affected the trial's outcome. Robinson v. Commonwealth, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986).

Appellant cross-examined Morris concerning his prior criminal record and his association with the Commonwealth. However, at sentencing appellant demonstrated the extent of impeachment evidence he would have been capable of producing at trial had the Commonwealth responded to appellant's discovery request in a timely way. Cf. Moreno, 10 Va. App. at 420, 392 S.E.2d at 844 (defendant, who "introduced no evidence post

-6-

verdict that he had uncovered that might have been obtained and been used at trial had he been furnished" impeachment evidence earlier, had failed to demonstrate how the late disclosure prejudiced him).  A reasonable probability exists that if the jury had heard this evidence, which significantly depreciated the value of Morris' testimony, the outcome of the trial would have been different.

                                    IV.

    Appellant further contends that the trial judge's failure to grant his motion in limine violated his constitutional rights to due process and equal protection.  Prior to trial, defense counsel made a motion in limine to exclude evidence of other crimes contained in two taped conversations.  The trial judge opined that he would not rule on the admissibility of this evidence until it was offered in evidence.  The judge commented that he would not expect the prosecutor, who presumably knew the rules of evidence, to offer inadmissible evidence.  Appellant made no objection to the ruling of the court and did not raise at any time a constitutional issue of due process or equal protection.  Therefore, we decline to address these issues.  Rule 5A:18.

    Furthermore, the trial judge sustained appellant's objections to Carnes' references to "other cases" and to the fact that appellant had been in prison.  These rulings cannot be considered as a basis for reversal on appeal.  See id.

                                    V.

    Appellant argues that the trial court erred in excluding

from evidence his denials to Carnes that he started the fire.

> Generally, an out-of-court statement by a criminal defendant, if relevant, is admissible as an exception to the hearsay rule when offered by the prosecution because it constitutes an admission of a party. However, when proffered by the party who made the statement, such a statement is generally not admissible. Such statements are hearsay, therefore, they are inadmissible unless falling within an exception to the hearsay rule.

King v. Commonwealth, 18 Va. App. 57, 59, 441 S.E.2d 704, 705 (1994). Appellant did not establish that his own statements which he sought to admit fell within any exception to the hearsay rule. The trial court, therefore, did not err in excluding them.

VI.

Defense counsel, on cross-examination, asked Morris whether he had been found guilty of the misdemeanor of interfering with a police officer. The prosecutor objected to this question. The trial court ruled that defense counsel could ask only questions that affected Morris' credibility. Defense counsel questioned Morris no further.

Appellant complains on appeal that the trial court prevented him from impeaching the credibility of Morris with a conviction of a misdemeanor involving moral turpitude. Generally, "[e]vidence of a prior conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness." Dowell v. Commonwealth, 12 Va. App. 1145, 1147, 408 S.E.2d 263, 264 (1991), aff'd en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992). "'Moral turpitude' is defined as 'an act of baseness, vileness or depravity in the private and social duties

which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" Id. (citation omitted). "The character of the misdemeanor affords the test" of whether the crime involves moral turpitude. Parr v. Commonwealth, 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957).

"'To constitute obstruction of an officer in the performance of his duty . . . there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty . . . .'" Love v. Commonwealth, 212 Va. 492, 494, 184 S.E.2d 769, 771 (1971) (citation omitted). A conviction of interfering with a police officer, however, does not involve a witness' credibility and is not a crime of moral turpitude. Thus, the ruling of the trial court was plainly correct. See 1 Charles E. Friend, The Law of Evidence in Virginia § 4-2 (4th ed. 1993).

## VII.

We do not address appellant's challenges to the sufficiency of the evidence because it is unlikely these same issues will recur in a future trial. Because we find appellant was prejudiced by the late disclosure of information the Commonwealth was required to reveal, we reverse appellant's convictions and remand the case for further proceedings should the Commonwealth be so advised.

Reversed and remanded.