# BEVERLY C. JOHN READ

## v.

# VIRGINIA STATE BAR

Record No. 861166

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell and Thomas, JJ., and
Cochran, Retired Justice

*Joseph M. Spivey, III (Manning Gasch, Jr.; Robert L. Brooke; Hunton & Williams*, on briefs), for appellant.

*Gregory E. Lucyk, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; James T. Moore, III, Senior Assistant Attorney General*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from an order of the State Bar Disciplinary Board (the Board) revoking Beverly C. John Read's license to practice law. The Board found that Read violated Disciplinary Rules 1-102(A)(3) and 8-102(A)(4), which provide respectively as follows: "A lawyer shall not . . . [c]ommit a crime or other deliberately wrongful act that reflects adversely on a lawyer's fitness to practice law" and "The prosecutor in a criminal case or a government lawyer shall . . . [d]isclose to a defendant all information required by law." At the time of the conduct complained of, Read was the Commonwealth's Attorney for Rockbridge County. The State Bar contends that in the midst of a criminal trial, Read failed to disclose certain exculpatory evidence. Based on this failing, the Board ordered that Read be disbarred. We reverse.

Read was the prosecutor in the case of *Commonwealth* v. *Mesner*. The defendant was charged with arson and murder in a fire at a Washington and Lee University fraternity house. The fire occurred in April 1984. The trial was scheduled for December 1984.

On October 2, 1984, Mesner's counsel filed a Motion for Discovery and Inspection in which they requested, among other things, all exculpatory evidence. The motion was never formally granted and no order was ever formally entered. However, the trial court addressed the discovery requests in a letter dated November 8, 1984. That letter was treated by all counsel as the discovery order. It provided in pertinent part as follows:

The pretrial discovery order in this case . . . must adhere . . . (2) to the limitations of the rule set down in *Brady* v. *Maryland*; and (3) to Rule 3A:11 of the Virginia Rules.

. . . .

Clearly, the Commonwealth has to prove beyond a reasonable doubt that (1) the fire was incendiary in origin (arson) and (2) the defendant was the agent thereof. Under the Virginia Rules, any scientific report which addresses the first prong of proof is discoverable and I hereby order that it be produced. Secondly, any information that may exculpate the defendant as the agent thereof must be disclosed. Since identification is a key element in this particular case, I direct that the [identity] of any *material* witness who failed to identify the defendant in a photograph lineup be made known to the defendant.

. . . .

The discovery order shall direct that the duty to disclose exculpatory evidence to the defendant is a continuing duty.

During the investigation into the crimes, the Commonwealth learned that Peter Sils and Jean Dunbar, husband and wife, who lived near the fraternity house, went to the scene during the fire and saw a suspicious acting man near a bicycle. The Commonwealth sought to prove that Mesner was the man near the bicycle. At a pretrial conference, the Commonwealth revealed the names of Dunbar and Sils as witnesses who would testify on the Commonwealth's behalf.

At a lineup the day before trial, Dunbar was unable to make an identification. Sils, however, picked Mesner as the man he had seen at the fire. Defense counsel were present at the lineup and were aware that Dunbar could not make an identification.

Shortly after leaving the lineup, Sils had second thoughts about his identification. Sils expressed his concerns to a clerk in Read's office. An assistant commonwealth's attorney visited Sils at home that night. Sils again expressed his doubts.

The trial began on Wednesday, December 19, 1984. Sils was under subpoena from the Commonwealth. While present at the courthouse, he observed Mesner entering and leaving the courtroom. Sils became convinced that Mesner was not the man Sils had seen at the fire. After the trial recessed for the day, Sils told Read that he was certain Mesner was not the man he had seen at

the fire. Read then asked whether Sils could say Mesner looked like the man. Sils said he could but that he would have to add that he was certain Mesner was not the man.

On the next day of trial, Thursday, Sils was again present at the courthouse. At the end of the day Sils was told he would not be called as a witness and that his presence was no longer required.

When Sils returned home, he and his wife became concerned that Sils' changed testimony would never be presented to the jury. They called defense counsel to explain their position. The next morning, before trial resumed for the third day, Sils and Dunbar met with defense counsel. Both explained that they were convinced Mesner was not the man they had seen at the fire. Both agreed to testify on Mesner's behalf.

When the trial resumed, Read rested the Commonwealth's case without calling Sils and without telling defense counsel of Sils' change in testimony. At that point, Eric Sisler, one of defendant's lawyers, turned to an associate and told him to tell Sils and Dunbar to get ready to testify. Immediately thereafter, Read attempted to say something to Sisler. Sisler would not listen. Read then wrote something on a legal pad but Sisler would not accept the paper. The transcript next shows that Read stated, on the record, that Sisler would not permit him to pass along "this information." Read then stated for the record the names of Peter Sils and Jean Dunbar and described them as identification witnesses who had changed their testimony from placing Mesner at the scene of the fire to stating that the person they had seen at the fire was not Mesner. Read further advised the Court that he had tried to give the information to Sisler but Sisler "didn't want to hear it."

After this exchange, defense counsel moved to strike the Commonwealth's case and moved to dismiss for prosecutorial misconduct. The motion to strike was denied. The motion to dismiss was granted for reasons unrelated to the failure of the Commonwealth's Attorney to give defense counsel Sils' name.

Read was first charged with misconduct at the district committee level. The Sixth District Committee of the Bar found a violation of DR 8-102(A)(4) and DR 1-102(A)(3). According to the district committee, Read failed to disclose that

Jean Dunbar and Peter Sils had recanted their previously incriminating identification of the defendant and had told

[Read], in the case of Sils, that he was sure the defendant was not the man sought to be identified.

The district committee recommended a private reprimand. Read demanded a redetermination of that private reprimand by the Board.

The Board said that the issue before it was whether Read was "required by law" to disclose to defense counsel Sils' change in position. The Board concluded that Read was required to make the disclosure because Sils' changed testimony was exculpatory. The Board made reference to the trial court's November 8, 1984 letter and to a subsequent pretrial conference where the trial court again admonished Read to disclose exculpatory information. The Board pointed out that Read "made no effort to disclose the exculpatory information before the time the Commonwealth rested." The Board stated that Read made "a conscious decision not to reveal Sils' change in position." The Board then concluded that Read "would have knowingly permitted Mesner to be convicted of arson and murder without permitting the jury to consider Sils' testimony that the man on the bicycle at the scene of the fire was not Mesner." The Board imposed the sanction of revocation.

The State Bar contends that Read violated two portions of the trial court's November 8 letter: the portion concerning *Brady* v. *Maryland*, 373 U.S. 83 (1963), and the portion concerning Rule 3A:11. According to the State Bar, both factors define what Read was "required by law" to disclose. Read argues that he complied with both *Brady* and Rule 3A:11. We agree with Read.

■ We hold that there was no *Brady* violation in this case. Defense counsel knew of Sils' change in testimony in sufficient time to make use of his testimony at trial. In *United States* v. *Darwin*, 757 F.2d 1193 (11th Cir. 1985), the defendant complained that *Brady* was violated because the government failed to reveal certain information about a witness until after the witness had testified even though the government had been aware of the information for four days prior to disclosure. The Eleventh Circuit rejected the *Brady* claim:

The point in the trial when a disclosure is made . . . is not itself determinative of timeliness. We agree with those circuits holding that *a defendant must show that the failure to earlier disclose prejudiced him because it came so late that*

*the information disclosed could not be effectively used at trial.*

757 F.2d at 1201 (emphasis added). The United States Court of Appeals for the Tenth Circuit wrote as follows with regard to the timing of disclosures required by *Brady*: "This circuit has previously concluded that *Brady* is not violated when Brady material is available to defendants during trial." *United States* v. *Behrens*, 689 F.2d 154 (10th Cir. 1982). *See also United States* v. *Stone*, 471 F.2d 170 (7th Cir. 1972); *United States* v. *Elmore*, 423 F.2d 775 (4th Cir. 1970). Read did not violate the trial court's letter order with regard to *Brady*.

■ Nor did Read violate the portion of the November 8 letter that rests upon the requirements of Rule 3A:11. That rule does not concern disclosure of the type of information complained of in this case.* Disclosure of the name of a witness who changed his testimony in a way beneficial to the defendant is simply not the subject of Rule 3A:11. Therefore, the State Bar's reliance upon Rule 3A:11 to establish Read's violation of law is misplaced.

We hold that there was no violation of DR 8-102(A)(4). Further, we are of opinion that the conclusion that Read violated DR 1-102(A)(3) was predicated upon the violation of DR 8-

---

* The pertinent provisions of Rule 3A:11 read as follows:

(b) *Discovery by the Accused.*

(1) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth, and (ii) written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused or the alleged victim made in connection with the particular case, or copies thereof, that are known by the Commonwealth's attorney to be within the possession, custody or control of the Commonwealth.

(2) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph designated books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, that are within the possession, custody, or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. This subparagraph does not authorize the discovery or inspection of statements made by Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth or of reports, memoranda or other internal Commonwealth documents made by agents in connection with the investigation or prosecution of the case, except as provided in clause (ii) of subparagraph (b)(1) of this Rule.

102(A)(4). Consequently, we hold that there was no violation of DR 1-102(A)(3).

In light of the foregoing, we will reverse the order of the Disciplinary Board and dismiss the case.

*Reversed and dismissed.*