COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman,* Willis and Annunziata
Argued at Richmond, Virginia


DAVID EDWARD McCORD

MEMORANDUM OPINION** BY
v. Record No. 2071-99-2 JUDGE SAM W. COLEMAN III
JANUARY 9, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Steven D. Benjamin (Betty Layne DesPortes;
Benjamin & DesPortes, P.C., on briefs), for
appellant.

John H. McLees, Jr., Senior Assistant
Attorney General (Mark L. Earley, Attorney
General, on brief), for appellee.


David Edward McCord was convicted in a bench trial of two

counts of attempted forcible sodomy, two counts of forcible

sodomy, rape, and abduction with intent to defile. On appeal,

McCord contends that the Commonwealth failed to disclose

exculpatory evidence in violation of the court's discovery order

and, as a result of those discovery violations, the trial court

---

* Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

erred by failing to declare a mistrial. Finding no error, we affirm.

## I.  BACKGROUND

On February 4, 1998, at approximately 7:00 p.m., the twelve-year-old victim was walking her neighbor's dog. The defendant, David McCord, approached the victim and attempted to befriend her by asking permission to pet and walk the dog. As the child attempted to leave, McCord grabbed and physically restrained her. He then sodomized and raped her, and then carried her to a parking lot where he released her when he heard the child's mother calling for her.

The victim immediately reported the incident to the police. She gave them a physical description of her attacker, including his clothing. Chesterfield County Police Officer Yager Burke testified that the victim described her assailant as a "white male, 15 or 16 years old. Wearing a black coat, black shirt with silver or light color on the shirt, khaki pants, black tennis shoes." She described him as having "very short, buzz cut blond hair." When she was interviewed again at the hospital, she added that he had a bony nose and acne.

On the night of the assault, Chesterfield Police Officer Elizabeth Baker showed the victim two photo lineups. The victim did not identify anyone from either photo lineup as her assailant, even though a photo of McCord with longer hair taken four months

before the assault was in the second photo array.  The next day, the victim worked with a police officer to complete a computer-generated composite of the suspect.  Later that day, the victim was shown a third photo lineup which contained a recent photograph of McCord.  According to Officer Baker, the victim "almost immediately" identified McCord as her assailant.  Baker testified, however, that the victim displayed "somewhat" of a reservation in identifying McCord.  Baker explained that the victim told her that McCord's face looked "a little washed out" and he "did not have as much acne as she thought."  However, on cross-examination, Baker further stated that the victim "positively" identified McCord in the third lineup, stating that the photo looked exactly like her assailant.  Baker testified that there appeared to be "no doubt" in the victim's mind when she identified McCord as her assailant from the third photo lineup.  After the victim identified McCord from the third photo lineup, Baker showed her a Polaroid photo of McCord that was used to make the photo that was actually used in the third lineup.  Upon seeing the original Polaroid photo, the victim stated that the photo "was exactly like him."

Based on the victim's identification of McCord in the third photo lineup, McCord was arrested.  At the time he was arrested, McCord gave Officer Baker his coat and a black shirt, which McCord maintained his brother had been wearing on the day of the alleged

assault.  After McCord's arrest, the officers obtained a search warrant for his home.  As a result of the search, the officers seized a pair of shoes, which matched the victim's description of the assailant's shoes.  The victim identified the clothing items to be like those worn by the assailant.  She stated that the shoes were identical to those worn by her assailant and that the style of the coat looked liked the assailant's coat but she remembered it as being "lighter [in color] than she thought."  She stated that the coat smelled like the assailant.  The victim also identified the shirt as being like the one worn by her assailant, but she stated that she did not remember "that red was on the shirt."

A forensic scientist, who was qualified as an expert in trace evidence, examined McCord's coat and the coat and sweater the victim was wearing when she was assaulted.  The expert testified that fibers found on McCord's coat were physically, chemically, and optically consistent with fibers from the victim's clothing.

Prior to trial, McCord requested disclosure of exculpatory evidence from the Commonwealth.  He specifically requested and the court ordered, "[a] description of any identification procedure involving the defendant in which a witness failed to identify or expressed any reservation about identifying the defendant."  The discovery order further compelled the Commonwealth to produce "all photographs or photograph arrays."  In response to the discovery

order, the Commonwealth disclosed the photos that were used in the photo lineups that where shown to the victim.  The Commonwealth did not give McCord the single Polaroid photo or disclose to him that it was shown to the victim.

At the conclusion of the Commonwealth's case, McCord moved for a mistrial and dismissal of the charges.  He argued that the Commonwealth failed to turn over the Polaroid photo in violation of the discovery order that required the Commonwealth to provide the defendant with "all photographs or photograph arrays."  He also argued that the Commonwealth failed to disclose exculpatory information because the Commonwealth failed to inform him that the victim was uncertain or reluctant to identify him until after she had been shown the single Polaroid photo.  McCord also argued that, because the photo lineup was "tainted" by showing the victim the single Polaroid photo, the evidence obtained as a result of the search warrant and the victim's in-court identification of him should be suppressed.

## II.  ANALYSIS

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  "Favorable evidence is material 'only if there is a reasonable probability that, had

the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'"  Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  The reviewing court must "assess the reasonable probability of a different result in 'light of the totality of circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the [nondisclosure].'"  Taitano v. Commonwealth, 4 Va. App. 342, 349, 358 S.E.2d 590, 594 (1987) (citation omitted).  This test requires that the effect of the suppressed evidence be considered collectively.  See Kyles v. Whitley, 514 U.S. 419, 436 (1995).  Moreover, we have stated:

> Late disclosure does not take on constitutional proportions unless an accused is prejudiced by the discovery violations depriving him of a fair trial.  So long as exculpatory evidence is obtained in time that it can be used effectively by the defendant, and there is no showing that an accused has been prejudiced, there is no due process violation.  Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546-47 (1987).  It is the defendant's ability to utilize the evidence at trial, and not the timing of the disclosure, that is determinative of prejudice.  See Robinson v. Commonwealth, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986).

<u>Moreno v. Commonwealth</u>, 10 Va. App. 408, 417, 392 S.E.2d 836, 842 (1990). Exculpatory evidence includes evidence that may be used by the defendant for impeachment purposes. <u>See</u> <u>Robinson</u>, 231 Va. at 150, 341 S.E.2d at 164.

On appeal, McCord argues that the victim's reservations in identifying him in the photo lineup and in identifying his clothes is exculpatory evidence. He asserts that the untimely disclosure of the exculpatory evidence deprived him of (1) due process because he was unable to effectively utilize the information at trial, (2) effective assistance of counsel,[1] and (3) the right to a jury trial. Further, he argues that had the circumstances surrounding the identification procedure and the use of the single Polaroid photo been disclosed, he would have filed a pretrial motion to suppress the identification.

### A. Photograph Identification

We accept for purposes of our analysis that the Commonwealth violated the court's discovery order, which compelled the Commonwealth to provide McCord "all photographs or photograph arrays," by failing to give McCord the single Polaroid photo used

---

[1] After McCord was convicted, but before he was sentenced, he filed a motion for substitution of counsel. New counsel then filed his first motion for new trial, arguing, among other things, that trial counsel was ineffective because of "counsel's acts and omissions during counsel's pretrial and trial representation." New counsel also contended that but for trial counsel's promise that McCord would have been acquitted, McCord would have demanded a jury trial.

to make the photo in the third photo lineup or to tell him that the Polaroid was used to assist the victim in the identification procedure. However, we hold that McCord learned of the Polaroid photo in time to use it effectively at trial and that there is no reasonable probability that, had the Commonwealth given or informed the defendant regarding the use of the Polaroid photograph, the outcome of the proceedings would have been different. McCord vigorously cross-examined the officer regarding the identification procedures, and he vigorously cross-examined the victim about the identification and her level of certainty in identifying him. Further, the record reflects that McCord made no request for a continuance at any time during trial after he learned of the purported discovery violations.

The record does not support McCord's contention that the victim expressed reservations when identifying McCord or that the victim identified McCord only after seeing the single Polaroid photo of him. At trial, the victim testified that she identified McCord from the third photo lineup, before she was shown the single Polaroid photo. She testified that after she identified McCord, she told Officer Baker that the photo looked "washed out" and that the person did not appear to have as much acne as she remembered her assailant having. The victim stated that the photograph "didn't look totally like him. Because of the acne." At that point, Officer Baker showed the victim the Polaroid photo.

On cross-examination, the victim testified that when she was shown the third photo lineup she identified McCord, stating "this looks exactly like the person who attacked me. But his face is very washed out. Do you have a better picture?" After the victim was shown the Polaroid, she stated, "Yes, this is the man that did this to me." Officer Baker also testified that the victim identified McCord from the third photo lineup. Baker stated that there appeared to be "no doubt" in the victim's mind in identifying McCord from the third photo lineup.

McCord has failed to demonstrate that the undisclosed evidence concerning the Polaroid photo was exculpatory. Because the evidence was not exculpatory, the Commonwealth was not required under Brady to disclose it. Therefore, the trial court did not err in denying McCord's motion for a mistrial.

To the extent that McCord argues that had the Commonwealth disclosed the evidence he would have moved to suppress the identification and insisted on a jury trial, McCord failed to present these arguments to the trial court when arguing his motion for a mistrial. By failing to argue that the nondisclosure of this evidence deprived him of his right to a fair trial and his right to a jury trial at the time he moved for a mistrial, the trial judge was unable to consider the merits of this argument. Accordingly, we will not consider those issues on appeal. See Rule 5A:18.

## B. Clothing Description

McCord next asserts that the Commonwealth violated the discovery order by failing to disclose that the victim had reservations in identifying the clothing obtained from his home as being the same as worn by the assailant.

We find that McCord obtained the evidence regarding the victim's identification of the clothing in time to effectively use it at trial. Assuming that some aspects of the victim's clothing identification were exculpatory, McCord has failed to demonstrate that he was prejudiced by the late disclosure. When interviewed by law enforcement officials after the assault, the victim described her assailant as wearing a black shirt with silver lettering, khaki pants, a mid-thigh black or dark-colored coat with a drawstring waist, and black suede sneakers with a thick white sole. Based on the victim's description of the clothing, Officer Baker obtained from McCord a black T-shirt with white lettering, a pair of black suede sneakers, and a khaki-colored, mid-thigh length coat with a drawstring waist. The items of clothing were shown to the victim prior to trial, and she identified them as those worn by her assailant. The victim stated that the shoes were identical to those worn by the assailant. Although the coat was a lighter color than the coat she had remembered, the victim stated that the coat was the same style as the one worn by the assailant and that the coat smelled like her

- 10 -

assailant.  The victim identified the shirt but stated that she did not remember "that red was on the shirt."

At trial, the victim identified the shirt that was obtained from McCord but stated that she remembered the letters as being silver not white.  The victim unequivocally identified the shoes as those worn by the assailant.  The victim also identified the coat as being worn by the assailant because, although it was not the same color, it was the same style and it smelled like her assailant.  McCord objected to the admissibility of the shirt, arguing that the victim failed to sufficiently identify it.  On cross-examination, the victim explained that she may have believed the letters on the shirt were silver because of the reflection of the light in the area where she had been accosted.  She also testified that she may have remembered the coat being black rather than khaki because it was dark that evening.

Assuming that the statements the victim made when identifying the clothing were exculpatory, any failure by the Commonwealth to disclose the evidence did not prevent McCord from effectively using the evidence at trial.  The record reflects that McCord vigorously cross-examined the victim about the discrepancies between the description of the clothes she stated her assailant was wearing and the clothes that were obtained from McCord.  Moreover, McCord was also aware of the discrepancies from the transcript of the preliminary hearing and he used the transcript

- 11 -

in cross-examining the victim.  Further, McCord did not object to the admissibility of the evidence at trial, move for a continuance, or seek to suppress the evidence.

Although McCord asserts that had the Commonwealth disclosed the victim's reservations in identifying the clothing he would have insisted on proceeding with a jury trial, he argued in his second motion for a new trial that he made the tactical decision to waive a jury trial after evaluating the weight of the fiber evidence.  Further, in his first motion for a new trial, McCord asserted that he waived his right to a jury trial based on trial counsel's assurance that he would be acquitted of all charges. "The mere possibility that 'undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'"  Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996) (citation omitted).  McCord's assertions that had he known of the evidence earlier he would have elected a jury trial and that the outcome of the proceeding with a jury trial would have been different from a judge trial is speculative and insufficient to establish prejudice.

Accordingly, we find that the trial court did not err in denying McCord's motions for a mistrial and for a new trial. We, therefore, affirm the convictions.

Affirmed.

- 12 -